E-FILED
Wednesday, 09 September, 2026 03:50:55 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **MICHAEL KEITHLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-1509** |
| | ) | |
| **VILLAGE OF SOUTH JACKSONVILLE and STEVEN HELMICH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER AND OPINION**

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court is Plaintiff Michael Keithley's Rule 702 Motion to Exclude the Testimony of Defendants' Expert Witness Mark S. Lamb (d/e 41), to which Defendants Village of South Jacksonville and Steven Helmich filed a Response (d/e 43). Plaintiff filed a Reply in Support of his Rule 702 Motion to Bar Mr. Lamb (d/e 50) with leave of Court and over Defendants' objection. Because Mr. Lamb did not identify and apply a reliable methodology and because his testimony is unlikely to meaningfully assist the jury, Plaintiff's Motion (d/e 41) is GRANTED.

## I. BACKGROUND

### A. Complaint

Plaintiff filed the instant suit against Defendants pursuant to 42 U.S.C. § 1983, bringing claims of excessive force, false arrest, and unlawful seizure in violation of the Fourth Amendment, together with accompanying state law claims.

Specifically, Plaintiff alleges that on July 13, 2024, Defendant Steven Helmich, a police officer employed by Defendant Village of South Jacksonville, arrested Plaintiff solely because he refused to produce identification when Defendant Helmich responded to a disturbance in the lobby of a hotel where Plaintiff was a guest. During the arrest by Defendant Helmich, Plaintiff alleges that he suffered injuries including cuts to his wrists and tears to the tissue in his left shoulder and arm. Further, Plaintiff alleges that Defendant Helmich charged him with four offenses for which probable cause was lacking: disorderly conduct, obstructing a peace officer, resisting a peace officer, and aggravated battery to a police officer.

**B. Expert Report of Mark S. Lamb**

Defendants produced expert disclosures (d/e 41-1) to Plaintiff on January 30, 2026. Defendants' Expert Disclosure listed Mark S. Lamb as a retained expert witness pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

According to Defendants' disclosure, Mr. Lamb does not have a list of publications and has never previously served as an expert witness. Defendants listed the following materials reviewed by Mr. Lamb in the preparation of his report: Defendants' First Amended Answer and Affirmative Defenses to Amended Complaint (d/e 21); police reports by Defendant Helmich and by non-party Sergeant Wilson from July 13, 2024; body cam videos of Defendant Helmich from July 13, 2024; photographs taken at the jail on July 13, 2024; audio of the 911 call placed by hotel manager Amy Bates on July 13, 2024; interrogatory answers by Defendants in this case; and relevant statutes.

In Defendants' disclosures, they expressly reserved the right to supplement Mr. Lamb's report.

Mr. Lamb's report (d/e 41-2) is approximately six single-spaced pages. He begins with a brief description of his 27 years of

experience working for the Peoria Police Department, in which he "worked in various capacities"—including "regularly work[ing] as a patrol officer" and "regularly be[ing] involved in the training of new hires[.]" Mr. Lamb then lists the materials he reviewed before preparing his report and opinions in this matter. Those materials are consistent with those identified by counsel in Defendants' Expert Disclosures, listed above.

In the report, Mr. Lamb also indicates the following basis for his opinions: "My experience in three decades of police work for the City of Peoria allows me [to] render these opinions based upon my training, experience and my review of all of the materials described above."

The remainder of the report consists of a narrative description of Mr. Lamb's understanding of the events that occurred on July 13, 2024, about which he expressed the following principal opinions.

First, as to the investigatory steps taken by Defendant Helmich and his request for identification from Plaintiff, Mr. Lamb opined as follows:

- "Upon arrival at the hotel, Officer Helmich took appropriate steps to investigate the call that had been placed to Morgan County Dispatch by the hotel manager[.]"

- "[I]t was appropriate for Officer Helmich to seek out information from the hotel staff and then obtain information from Michael Keithley as to his involvement in the disturbance that prompted the call."

- "Officer Helmich had ample reason to seek Michael Keithley's name, identifying information or an identification card, as both the manager and the front desk clerk had identified Keithley as someone who had caused a problem or disturbance in the hotel. The demeanor of the front desk clerk being visibly upset and crying gave Officer Helmich an obvious reason to believe that Michael Keithley had caused a problem or disturbance at the hotel prior to Officer Helmich's arrival. Officer Helmich gave Michael Keithley more than ample opportunity to provide his name, identification card or other identifying information, but Keithley plainly refused to cooperate with Officer Helmich's efforts to investigate the situation[.]"

- "Michael Keithley was uncooperative, refusing to provide his name or identification to Officer Helmich, and Officer Helmich was required to obtain Keithley's name and identification for purposes of investigating the complaint that had been made by the hotel manager."

- "It is my opinion that Officer Helmich had more than ample or sufficient probable cause to investigate Michael Keithley, based upon the information that was available to Officer Helmich regarding the call to Morgan County Dispatch from the hotel manager…and based upon my review of the body camera video and audio."

Second, Mr. Lamb reported the following opinions regarding the basis for the arrest of Plaintiff by Defendant Helmich:

- "It was appropriate for Officer Helmich to place Michael Keithley under arrest after Keithley declined repeated requests by Officer Helmich for his identification, given that Keithley was identified as the cause of the disturbance at the hotel, which prompted the call for assistance from the hotel manager."

- "Officer Helmich appropriately exercised his discretion, based upon the clear probable cause, arrested Michael Keithley after he was not cooperative, which is often the occurrence when an individual has consumed notable amounts of alcohol."

- "It is also my opinion that the citations issued to Keithley (disorderly conduct, resisting a peace officer, obstructing a peace officer, and aggravated battery to a peace officer) were appropriately issued based upon my review of the body camera video footage and the totality of the circumstances."

As for claims of excessive force and any resulting injuries, Mr. Lamb opined:

- "I do not believe, based upon my years of experience and training as a police officer, having taken hundreds of arrestees into custody, that Officer Helmich exercised or utilized any 'excessive force' upon Michael Keithley."

- "It is possible that Officer Helmich may have applied the handcuffs tighter on the left wrist on Michael Keithley, but that would have been due to Keithley resisting Officer Helmich's efforts to place Keithley under arrest. It is also possible that since Officer Helmich did not improperly over-tighten the handcuffs on Michael Keithley before the transport that the cuffs were somewhat loose and being double-locked, would move up and down Keithley's lower forearm and potentially scrape him because they are a metal cuff. This cannot be avoided with metal cuffs, if the suspect is moving around."

- "Based upon my observation of the body camera video, I do not find that the handcuffs were applied improperly or too tight by Officer Helmich. Officer Helmich was able to place his thumb between the handcuff and the right wrist, which indicates that the handcuff is not too tight. Due to Michael Keithley resisting Officer Helmich's efforts to apply the handcuff to the left wrist, Officer Helmich was forced to struggle with Keithley to get his left wrist cuffed."

- "I expect that there may have been scrapes or limited cuts to the wrist or lower forearm of Michael Keithley because of how he was seated and leaning against his arms in the back of the police truck, being driven by Officer Helmich. Keithley did not raise any such positioning regarding the handcuffs, which based upon his demeanor previously and interactions with Keithley, I would expect Officer Helmich would have addressed in that he treated Keithley in a professional manner beginning with his arrival at the hotel."

- "The photograph does show a mark on Officer Helmich's arm from where the arm was pinned by Keithley against the police truck, before Keithley was placed in the truck by Officer Helmich. Certainly, it is plausible that Michael Keithley developed a scrape or indentation on one arm after hip-checking Officer Helmich's arm while Officer Helmich was searching his pocket."

Finally, Mr. Lamb offered the following general opinions:

- "[I]t is my view from the interaction between Helmich and Keithley that Officer Helmich was sufficiently professional and acted appropriately in his interactions with Keithley[.]"

- "Given the totality of the circumstances, based upon my review of all of the above materials, including the body camera video of their interactions, i.e., between Officer Helmich and Michael Keithley, including the interaction with the front desk clerk upon Officer Helmich's arrival, it is my opinion that Officer Helmich acted in a reasonable fashion."

- "It is my opinion that Officer Helmich acted appropriately, and consistently with applicable laws and statutes."

**C. *Daubert* Motion**

Plaintiff filed the instant Motion to Exclude Testimony of Defendants' Expert Witness Mark S. Lamb (d/e 41) less than one week after receiving Defendants' Expert Disclosures. In Plaintiff's Motion, he raises the following objections to Mr. Lamb's report.

First, Plaintiff argues that Mr. Lamb identified no objective, reliable principles or methodology that he applied in this case. Second, Plaintiff maintains that Mr. Lamb improperly speculates on disputed facts and credibility issues, and without having reviewed all relevant materials. Third, Plaintiff argues that Mr. Lamb's opinions are impermissible legal conclusions that tell the jury how to decide the case. Finally, Plaintiff asserts that Mr. Lamb is not qualified to offer medical or injury causation opinions.

In Defendants' Response, they maintain that the following "key opinions" by Mr. Lamb are relevant and should be presented to the jury:

> (1) the investigation conducted by Officer Helmich into the hotel disturbance was professional and reasonable; (2) Officer Helmich's questioning of Plaintiff Keithley was appropriate; (3) Officer Helmich properly applied the correct handcuffs during

> the arrest and ensured they were fitted comfortably; and (4) after Plaintiff Keithley resisted being handcuffed, Officer Helmich used a reasonable amount of force to secure compliance.

(d/e 43, at 4-5). Defendants dispute Plaintiff's characterization of Mr. Lamb's opinions as relying on speculative or disputed facts, not being grounded in reliable principles or methods, and constituting impermissible legal conclusions. However, Defendants concede that Mr. Lamb is not qualified to render medical opinions and will not testify about the cause of any injuries in this case.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), govern the admissibility of expert opinions. Golpalratnam v. Hewlett-Packard Co., 877 F.3d 771, 778 (7th Cir. 2017). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

Under Daubert, the district court has a "gatekeeping obligation" under Rule 702 and "must engage in a three-step analysis before admitting expert testimony." Golpalratnam, 877 F.3d at 779. As gatekeeper, the Court must determine whether: (1) the expert is qualified; (2) the expert's methodology is reliable; and (3) the expert's testimony is relevant, i.e., will help the jury understand or decide the case. Id., at 778–79. The expert's proponent bears the burden of demonstrating that the testimony would satisfy the Daubert standard by a preponderance of the evidence. Id. at 782.

"District judges have wide discretion over decisions to admit or exclude evidence[.]" United States v. Brown, 871 F.3d 532, 536 (7th Cir. 2017). However, as the gatekeeper the district court cannot cross the line into the jury's province. "If the proposed expert testimony meets the Daubert threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof.'" Lapsley v. Xtek, Inc., 689 F.3d 802, 805 (7th Cir. 2012), quoting Daubert, 509 U.S. at 596. In other words, "the key to the gate is not the ultimate correctness of the expert's conclusions but rather the soundness and care with which the expert arrived at her opinion." Burton v. E.I. du Pont de Nemours & Co., Inc., 994 F.3d 791, 826 (7th Cir. 2021) (quotations omitted).

## III. ANALYSIS

### A. Expert Qualifications

An expert may be qualified under Rule 702 based solely on their experience. FED. R. EVID. 702 advisory committee's note (2000 Amendment) ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience."); see also United States v. Parra, 402 F.3d 752, 758 (7th Cir. 2005) ("While extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the

admission of testimony by experts whose knowledge is based on experience." Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000)), citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 156 (1999).

The Court concludes—and Plaintiff does not argue otherwise—that Mr. Lamb's 27 years of experience working for the Peoria Police Department, including regular work as a patrol officer, constitutes sufficient experience to satisfy the first consideration under Rule 702 and Golpalratnam.

**B. Reliability of Methodology**

However, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." FED. R. EVID. 702 advisory committee's note (2000 Amendment).

As applied to proposed expert testimony by law enforcement officers, district courts within the Seventh Circuit have explained that a reliable methodology requires that the proposed expert "explain how he reaches his conclusions—either by linking them to

generally accepted standards in the field or by citing information within his own practical experience." Blackmon v. City of Chicago, 2022 WL 21296465, *3 (N.D. Ill. Aug. 30, 2022) (collecting cases).

Examples of such explanations that have been found by other district courts to demonstrate a reliable methodology based upon law enforcement experience include "analyz[ing] the actions of officers involved in th[e] case by comparing them with best practices gleaned through [the expert's] years of experience," id., "compar[ing] the officers'…procedures with nationally accepted standards in the field as issued by the United States Department of Justice's National Institute of Justice[,]" id., and "compar[ing] the facts of each case with the standards of training and practice…including Supreme Court cases, departmental policies and procedures, applicable statewide police training programs, and model policies, training, and research from various institutions." Hurt v. Vantlin, 2019 WL 8267074, at *9 (S.D. Ind. Sept. 26, 2019).

In Hurt, the district court favorably outlined the process by which a proposed law enforcement expert applied a reliable methodology by proceeding through the following steps: "(1) developing an understanding of the facts; (2) analyzing the actions

of the officers; (3) comparing what the officers did and why with the standards of training and practice; and (4) defining and explaining consistencies and/or inconsistencies with applicable standards of training and practice." Id. at *7. Having applied that methodology, the court permitted the proposed law enforcement expert to testify (for example) "regarding the standards for evaluating whether probable cause exists and whether he believes Defendants followed those standards." Id. at *10, citing Jimenez v. City of Chicago, 732 F.3d 710, 721 (7th Cir. 2013) (affirming district court's decision to allow expert to testify regarding "the steps a reasonable police investigator would have taken to solve the ... murder, as well as the information that a reasonable police investigator would have taken into account as the investigation progressed," and the "ways in which evidence from other witnesses indicated that [defendants] departed from reasonable investigation methods").

This Court holds that Mr. Lamb's report does not evince the use or application of a reliable methodology. Although Mr. Lamb prefaces his opinions with a one-paragraph description of his experience and qualifications, he does not explain how he applied that experience to the facts of this case or why his experience is a

sufficient basis for his opinions, nor does he link his opinions to generally accepted standards in law enforcement or from his own experience in the field.

As one representative example, in Mr. Lamb's report, he summarily opines that "[u]pon arrival at the hotel, Officer Helmich took appropriate steps to investigate the call that had been placed to Morgan County Dispatch by the hotel manager"—without setting out any relevant standards for what constitute "appropriate steps" in responding to a dispatch call of that nature and then explaining any consistencies (or inconsistences) between Defendant Helmich's investigatory steps in this case and the general standards understood by Mr. Lamb based upon his own training and experience.

When Mr. Lamb does identify any specific basis for his opinion that particular actions by Defendant Helmich were "appropriate," "reasonable," or supported by "ample" reasons, he regularly bases those opinions solely on the materials he reviewed (typically citing only "the body camera video and audio") without drawing any connection to his own qualifications, experience, training, or understanding of any relevant standards. At other times, Mr. Lamb

opines that "Officer Helmich acted appropriately, and consistently with applicable laws and statutes" without identifying any applicable laws or statutes whatsoever.

Even when Mr. Lamb does refer to his own experience as the basis for an opinion—for example, "I do not believe, based upon my years of experience and training as a police officer, having taken hundreds of arrestees into custody, that Officer Helmich exercised or utilized any 'excessive force' upon Michael Keithley"—he does not elaborate on that training, experience, or the process of taking arrestees into custody in any manner that would assist the jury or that would constitute a reliable methodology. "When an officer is accused of using excessive force, the decisive question is whether the officer's conduct meets the Fourth Amendment's objective standard of reasonableness." Brown, 871 F.3d at 536. "Even though jurors can understand the concept of reasonableness, in some cases they may not fully grasp particular techniques or equipment used by police officers in the field." Id. at 537.

> In those instances an expert's specialized knowledge can "help the trier of fact to understand the evidence or to determine a fact in issue," as Rule 702 requires. FED. R. EVID. 702(a).

> Expert testimony of this type may be relevant in cases where specialized knowledge of law-enforcement custom or training would assist the jury in understanding the facts or resolving the contested issue. For example, if it's standard practice across the country to train officers to handle a given situation in a particular way, expert testimony about that training might aid a jury tasked with evaluating the conduct of an officer in that specific situation. The legal standard contemplates a reasonable officer, not a reasonable person, so it may be useful in a particular case to know how officers typically act in like cases.

Id. (emphasis in original).

Mr. Lamb's reference to his "years of experience and training," without further elaboration, does not assist the jury by providing any type of specialized knowledge such as standard practices or a description of the typical law enforcement response to a specific situation. Again, therefore, Mr. Lamb's report fails to make a connection between his qualifications (i.e., his experience in law enforcement) and how he arrived at his opinions in this case via a reliable methodology.

Mr. Lamb's opinions regarding the handcuffing of Plaintiff could, conceivably, incorporate specialized knowledge regarding "particular techniques or equipment used by police officers in the field" that would not be known to a juror. Id. However, while Mr. Lamb's opinions on that topic do refer to law enforcement practices

such as handcuffs being "double-locked" and an officer "plac[ing] his thumb between the handcuffs and the [arrestee's] right wrist," Mr. Lamb's report does not actually explain or elaborate upon these practices in any manner that would inform a jury as to whether these are standard practices, what the basis for those practices is, and whether Defendant Helmich's actions where consistent or inconsistent with any standard practices for handcuffing. Cf. McCloughan v. City of Springfield, 208 F.R.D. 236, 239 (C.D. Ill. 2002) (allowing an expert "to offer testimony regarding the proper procedures to be used by law enforcement officials when restraining arrestees who resist arrest").

"Daubert's gatekeeping requirement" is designed "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., 562 U.S. at 152. In short, "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" FED. R. EVID. 702 advisory committee's note (2000 Amendment), quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1319 (9th Cir. 1995). In

reviewing Mr. Lamb's expert report, and based upon the representative opinions discussed above, the Court cannot find that Mr. Lamb has employed "the same level of intellectual rigor" that is required of an expert; rather, Mr. Lamb's approach to this case largely asks that the Court and the jury simply "tak[e] [his] word for it" without showing his work through a reliable methodology. Kumho Tire Co., 562 U.S. at 152; Daubert, 43 F.3d at 1319.

For these reasons, Plaintiff's Motion (d/e 41) is GRANTED.

**C. Relevance of Testimony**

As indicated above in Section II., in order for expert testimony to be relevant it must help the jury understand the evidence or to determine a fact in issue. Golpalratnam at 778–79; FED. R. EVID. 702(a). Even if Mr. Lamb had applied a reliable methodology in his report, the Court finds that his proposed testimony would not meet "the Daubert threshold of relevance" and would therefore be inadmissible on that basis as well. Lapsley, 689 F.3d at 805.

First, the Seventh Circuit has held that an expert opinion as to an ultimate legal conclusion—for example, if an act is reasonable or constitutional—is often inadmissible. See, e.g. Good Shepherd Manor Foundation, Inc. v. City of Momence, 323 F.3d 557, 564 (7th

Cir. 2003) ("[E]xpert testimony as to legal conclusions that will determine the outcome of the case is inadmissible"). Because these ultimate legal conclusions must be determined by the jury, id., "[o]pinions that amount to legal conclusions do not assist the trier of fact." Client Funding Solutions Corp. v. Crim, 943 F.Supp.2d 849, 863 (N.D. Ill. 2013).

As summarized at length above, Mr. Lamb's report is replete with opinions as to ultimate legal conclusions: for example, that Defendant Helmich "acted in a reasonable fashion," "acted appropriately, and consistently with applicable laws and statutes," and "had more than ample or sufficient probable cause." In Defendants Response (d/e 43), they agree that his proposed expert testimony will include the following "key opinions": that Defendant Helmich's investigation "was professional and reasonable," his "questioning of Keithley was appropriate," and he "used a reasonable amount of force."

However, the Seventh Circuit has also recognized that "[e]xpert opinions on ultimate issues are not categorically impermissible" under the Rules of Evidence. Brown, 871 F.3d at 539 (emphasis

added), citing FED. R. EVID. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue."). Still,

> Rules 403, 702, and 704(b) operate (if in different ways) to prohibit expert opinions that would "merely tell the jury what result to reach." United States v. Noel, 581 F.3d 490, 497 (7th Cir. 2009).... [A]n expert's role is to "help the trier of fact to understand the evidence," FED. R. EVID. 702(a), not to draw conclusions for the fact finder when no help is needed.

Brown, 871 F.3d at 539.

> In other words, expert testimony is more likely to satisfy Federal Rule of Evidence 702's requirement that it assist the trier of fact to understand the evidence or determine a fact in issue when something peculiar about law enforcement (e.g., the tools they use or the circumstances they face) informs the issues to be decided by the finder of fact.

Florek v. Village of Mundelein, Illinois, 649 F.3d 594, 602 (7th Cir. 2011) (internal quotations omitted).

Therefore, "when the testimony is about a matter of everyday experience, expert testimony is less likely to be admissible." Id. at 602-03; see also Brown, 871 F.3d at 538 ("The level of factual complexity in the case may also bear on the relevance of expert testimony about police practices or protocols. In many cases evaluating an officer's conduct will draw primarily on the jury's collective common sense. The everyday experience of lay jurors fully equips them to answer the reasonableness question when a

case involves facts that people of common understanding can easily comprehend. (Internal quotations omitted)).

As Defendants correctly characterize this matter in their Response, "[t]his is a relatively straightforward action," involving "a bread and butter police investigation" and "basic concepts of police conduct." In short, by the Defendants' own characterization this is not a case involving "factual complexity"; rather, it is one of the "many cases [in which] evaluating an officer's conduct will primarily draw on the jury's collective common sense." Brown, 871 F.3d at 538.

As an example, the jury could easily use their common sense to conclude, as Mr. Lamb did in his report, that there was an "obvious reason to believe that Michael Keithley had caused a problem or disturbance at the hotel" because "both the manager and the front desk clerk had identified Keithley as someone who had caused a problem or disturbance in the hotel" and due to the "demeanor of the front desk clerk being visibly upset and crying[.]"

Likewise, Defendants admit in their Response that Plaintiff's "claim of excessive force does not involve the use of a firearm, Taser, or any takedown maneuver." Again, the jury could use their

common sense in making the same observations and drawing the same inferences as did Mr. Lamb when considering Plaintiff's allegations that the handcuffs were applied too tightly. For example, Mr. Lamb reported that he "did not hear or observe any complaints from Michael Keithley regarding the tightness or manner in which the cuffs had been applied to him by Officer Keithley in the body camera video or in the audio of the transport to the Morgan County Jail," and Mr. Lamb opined that "based upon his demeanor previously and interactions with Keithley, I would expect Officer Helmich would have addressed [any such complaints] in that he treated Keithley in a professional manner beginning with his arrival at the hotel."

In sum, Mr. Lamb's opinion would not be relevant where his testimony would principally be "regarding facts that people of common understanding can easily comprehend." United States v. Lundy, 809 F.2d 392, 395 (7th Cir. 1987).

## IV. CONCLUSION

The Court finds that Plaintiff has not met his burden of demonstrating that Mr. Lamb's testimony would satisfy the Daubert standard by a preponderance of the evidence. Golpalratnam, 877

F.3d at 782. Specifically, Mr. Lamb has not demonstrated the application of a reliable methodology by explaining how his experience was "reliably applied to the facts" and actually led to his conclusions. FED. R. EVID. 702 advisory committee's note (2000 Amendment). Further, Mr. Lamb's testimony would not aid the jury as the ultimate finder of fact where much of his testimony consists of legal conclusions, Good Shepherd Manor Foundation, 323 F.3d at 564, and when the jury could primarily draw on common sense to make the same factual observations and reach their own conclusions. Brown, 871 F.3d at 538.

For these reasons, Plaintiff Michael Keithley's Rule 702 Motion to Exclude the Testimony of Defendants' Expert Witness Mark S. Lamb (d/e 41) is GRANTED.

**IT IS SO ORDERED.**
**ENTERED: September 9, 2026.**
**FOR THE COURT:**

/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**